Electronically Filed
Marie Zaiz
Circuit Clerk
Ashley Doughty
22LA0047
St. Clair County
1/19/2022 4:37 PM
16363236

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST CLAIR COUNTY, ILLINOIS

| | |
|---|---|
| JULIA HORTON, Individually, and as Special Administrator of the Estate of RAY HORTON, Deceased, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiff, | |
| -vs.- | |
| AIR & LIQUID SYSTEMS CORPORATION, Successor-by-Merger to BUFFALO PUMPS, INC., | |
| ALFA LAVAL INC., as Successor-in-Interest to THE DELAVAL SEPARATOR COMPANY, | |
| AR WILFLEY AND SONS, INC., | |
| ARMSTRONG INTERNATIONAL, INC., | |
| ARMSTRONG PUMPS, INC., | |
| ATWOOD & MORRILL as Successor-in-Interest to WEIR VALVES AND CONTROLS USA Inc, | |
| AURORA PUMP COMPANY, | |
| BLACKMER PUMP COMPANY, | |
| BW/IP INC., | |
| CARRIER CORPORATION including its BRYANT HEATING AND COOLING and its division INTERNATIONAL COMFORT PRODUCTS, | |
| CLARK-RELIANCE CORPORATION, | |
| CLEAVER-BROOKS, a division of AQUA-CHEM INC., | |
| COPES-VULCAN, INC., | |
| CRANE CO., | |
| FLOWSERVE US, INC., Solely as Successor to ROCKWELL MANUFACTURING COMPANY, EDWARD VALVES, INC, and NORDSTROM VALVES, INC, | |
| FMC CORPORATION, as Successor-in-Interest to NORTHERN PUMPS and on behalf of its former Peerless Pump and Chicago Pump businesses, | |

No. 22-LA-0047

WRONGFUL DEATH

Exhibit A

| | |
|---|---|
| FOSTER WHEELER, LLC as survivor to the merger of FOSTER WHEELER CORPORATION, | ) ) ) |
| GARDNER DENVER, INC., | ) |
| GENERAL ELECTRIC COMPANY, | ) |
| GOODYEAR TIRE & RUBBER CO., | ) |
| THE GORMAN RUPP COMPANY, | ) |
| GOULDS PUMPS LLC, | ) |
| GREENE TWEED & CO, INC., | ) |
| GRINNELL LLC, | ) |
| HONEYWELL INTERNATIONAL INC., AS SUCCESSOR-IN-INTEREST TO BENDIX CORP., | ) ) ) |
| HONEYWELL INTERNATIONAL INC., as Successor-in-Interest to HONEYWELL INC., | ) ) ) |
| HOWDEN NORTH AMERICA, INC., individually and as Successor-in-Interest to BUFFALO FORGE COMPANY, | ) ) ) |
| IMO INDUSTRIES INC., Individually and as Successor-in-Interest to DELAVAL STEAM TURBINE COMPANY, | ) ) ) |
| INDUSTRIAL HOLDINGS CORPORATION f/k/a CARBORUNDUM COMPANY, | ) ) |
| INVENSYS SYSTEMS, INC., Individually and as Successor-in-Interest to Fulton Sylphon, | ) ) ) |
| ITT CORPORATION, | ) |
| JAMES WALKER MFG. CO., | ) |
| JOHN CRANE, INC., | ) |
| JOHNSON CONTROLS, INC., | ) |
| LAMONS, | ) |
| MCMASTER-CARR SUPPLY COMPANY, | ) |
| MILWAUKEE VALVE COMPANY, INC., | ) |
| MORSE TEC, LLC F/K/A BORGWARNER MORSE TEC, LLC and Successor-in-interest to BORGWARNER CORPORATION, | ) ) ) ) |
| THE NASH ENGINEERING COMPANY, | ) |
| SPENCE ENGINEERING COMPANY, INC., | ) |
| SPIRAX SARCO, INC., | ) |
| SPX CORPORATION, on behalf of WAUKESHA PUMPS, | ) ) |
| SPX CORPORATION AS SUCCESSOR-IN - INTEREST TO UNION PUMPS AND CLYDE PUMPS N/K/A CLYDE | ) ) ) |

|  |  |
|---|---|
| UNION PUMPS AN SPX BRAND, | ) |
| UNION CARBIDE CORPORATION, | ) |
| VELAN VALVE CORP., | ) |
| VIACOMCBS INC., f/k/a CBS Corporation, a | ) |
|     Delaware corporation, f/k/a Viacom | ) |
|     Inc., successor-by-merger to CBS | ) |
|     Corporation, a Pennsylvania | ) |
|     corporation, f/k/a Westinghouse Electric | ) |
|     Corporation, | ) |
| VIKING PUMP, INC., | ) |
| WARREN PUMPS, LLC., f/k/a WARREN | ) |
|     PUMPS, INC., | ) |
| WATTS WATER TECHNOLOGIES, INC., | ) |
|     FOR IT'S MUELLER STEAM | ) |
|     DIVISION, | ) |
| THE WILLIAM POWELL COMPANY, | ) |
| YORK INTERNATIONAL CORPORATION, | ) |
| YUBA HEAT TRANSFER LLC, | ) |
| AND, | ) |
| ZURN INDUSTRIES, LLC, | ) |
|  | ) |
|     Defendants. | ) |

**COMPLAINT**
**COUNT I**
**(NEGLIGENCE COUNT AS TO MANUFACTURERS OF ASBESTOS PRODUCTS)**

Now comes the Plaintiff, JULIA HORTON, Individually, and as Special Administrator of the Estate of RAY HORTON, Deceased, by her attorneys, SWMW Law, LLC, and for her cause of action against the Defendants, states:

1. The Plaintiff is the widow and Special Administrator of the deceased, RAY HORTON.

2. The Plaintiff is the duly appointed Special Administrator of the Estate of RAY HORTON, deceased, pursuant to an Order of the Circuit Court of the Twentieth Judicial Circuit St Clair County, Illinois.

3. Plaintiff brings this action pursuant to 740 ILCS 180/1-2.2, 755 ILCS 5/27-6 and 750 ILCS 65/15.

4. Ray Horton was first exposed to asbestos secondarily through his late grandfather Clayton Horton who worked as a union pipefitter out of Local 396 in Youngstown, OH from 1968 – 1975 at various locations including, but not limited to U.S. Steel, Youngstown, OH and Youngstown Sheet & Tube, Youngstown, OH.  While Mr. Horton resided in the family home he shared with his grandfather Clayton Horton unknowingly carried home asbestos on his clothes and person that then became entrained in the family home and automobile resulting in on-going and repeated asbestos exposures.  Next, Mr. Horton was exposed to asbestos while working as an auto mechanic at Bish Bros. Sunoco, Austintown, OH from 1973 – 1977.  Then he was exposed to asbestos from 1977 - 1989 while serving in the US Navy as a patternmaker-molder and later as a machinist mate while stationed at Naval Station Great Lakes, Chicago, IL and aboard the USS Samuel Gompers (AD-37), the USS  Sierra (AD-18) and the USS Semmes (DDG-18) performing

hands on tear out and installation of insulated steam piping and maintenance to pumps, valves and other asbestos containing equipment in the engineering spaces. Then Mr. Horton was exposed to asbestos while working as a marine machinist at Jacksonville Shipyard, Jacksonville, FL during 1989. Next he was exposed to asbestos while working as a heavy equipment operator at North Star Steel, Youngstown, OH from 1989 – 1992. Then he was exposed to asbestos while employed as production supervisor at Elwood Engineered Castings, Hubbard, OH from 1992 – 1994. Next Mr. Horton was exposed to asbestos while working as a maintenance mechanic at Gehring Industrial Maintenance, Hubbard, OH from 1994 – 1995. Then he was exposed to asbestos while employed as an electrician while working for Quality Electrical Service, Warren, OH from 1995 – 1996 and again from 1997 – 1998. Then Mr. Horton was exposed while working as a maintenance supervisor at G.W. Becker, Inc. from 1996 – 1997. Then he was exposed to asbestos while working for various mechanical contractors as a maintenance mechanic and millwright at the following premises including but not limited to Hawesville Papermill, Hawesville, KY, Dubois Papermill, DuBois, KY, North Anna Nuclear Plant, Mineral, VA, Anchor Darling, Raleigh, NC, Surrey Power Station, Surrey, VA, Willamette Papermill, Johnsonburg, PA from 1998 – 2000. Finally, Mr. Horton was exposed to asbestos while performing his own and helping others perform their own home remodeling and automotive repair work throughout the 1970's and 1990's.

     5.    Decedent's exposure to the materials, products, equipment, activities and conditions attributable to the various Defendants occurred at different times as to each and not necessarily throughout Decedent's entire career or life as to any particular Defendant. Plaintiff does not intend to extend exposure to a Defendant beyond the years established by the evidence in the case as to

that particular Defendant. Decedent's exposure to asbestos does not extend beyond December 4, 1980 unless established by the evidence in the case as to a particular Defendant.

6. During the course of Decedent's employments at the location(s) mentioned above, the Plaintiff was exposed to and inhaled, ingested or otherwise absorbed large amounts of asbestos fibers emanating from certain products they were working with and around which were manufactured, sold, distributed or installed by the Defendants: AIR & LIQUID SYSTEMS CORPORATION, Successor-by-Merger to BUFFALO PUMPS, INC., ALFA LAVAL INC., as Successor-in-Interest to THE DELAVAL SEPARATOR COMPANY, AR WILFLEY AND SONS, INC., ARMSTRONG INTERNATIONAL, INC., ARMSTRONG PUMPS, INC., ATWOOD & MORRILL as Successor-in-Interest to WEIR VALVES AND CONTROLS USA Inc, AURORA PUMP COMPANY, BLACKMER PUMP COMPANY, BW/IP INC., CARRIER CORPORATION including its BRYANT HEATING AND COOLING and its division INTERNATIONAL COMFORT PRODUCTS, CLARK-RELIANCE CORPORATION, CLEAVER-BROOKS, a division of AQUA-CHEM INC., COPES-VULCAN, INC., CRANE CO., FLOWSERVE US, INC., Solely as Successor to ROCKWELL MANUFACTURING COMPANY, EDWARD VALVES, INC, and NORDSTROM VALVES, INC, FMC CORPORATION, as Successor-in-Interest to NORTHERN PUMPS and on behalf of its former Peerless Pump and Chicago Pump businesses, FOSTER WHEELER, LLC as survivor to the merger of FOSTER WHEELER CORPORATION, GARDNER DENVER, INC., GENERAL ELECTRIC COMPANY, GOODYEAR TIRE & RUBBER CO., THE GORMAN RUPP COMPANY, GOULDS PUMPS LLC, GREENE TWEED & CO, INC., GRINNELL LLC, HONEYWELL INTERNATIONAL INC., AS SUCCESSOR-IN-INTEREST TO BENDIX CORP., HONEYWELL INTERNATIONAL INC., as Successor-in-Interest to HONEYWELL

INC., HOWDEN NORTH AMERICA, INC., individually and as Successor-in-Interest to BUFFALO FORGE COMPANY, IMO INDUSTRIES INC., Individually and as Successor-in-Interest to DELAVAL STEAM TURBINE COMPANY, INDUSTRIAL HOLDINGS CORPORATION f/k/a CARBORUNDUM COMPANY, INVENSYS SYSTEMS, INC., Individually and as Successor-in-Interest to Fulton Sylphon, ITT CORPORATION, JAMES WALKER MFG. CO., JOHN CRANE, INC., JOHNSON CONTROLS, INC., LAMONS, MCMASTER-CARR SUPPLY COMPANY, MILWAUKEE VALVE COMPANY, INC., MORSE TEC, LLC F/K/A BORGWARNER MORSE TEC, LLC and Successor-in-interest to BORGWARNER CORPORATION, THE NASH ENGINEERING COMPANY, SPENCE ENGINEERING COMPANY, INC., SPIRAX SARCO, INC., SPX CORPORATION, on behalf of WAUKESHA PUMPS, SPX CORPORATION AS SUCCESSOR-IN -INTEREST TO UNION PUMPS AND CLYDE PUMPS N/K/A CLYDE UNION PUMPS AN SPX BRAND, UNION CARBIDE CORPORATION, VELAN VALVE CORP., VIACOMCBS INC., f/k/a CBS Corporation, a Delaware corporation, f/k/a Viacom Inc., successor-by-merger to CBS Corporation, a Pennsylvania corporation, f/k/a Westinghouse Electric Corporation, VIKING PUMP, INC., WARREN PUMPS, LLC., f/k/a WARREN PUMPS, INC., WATTS WATER TECHNOLOGIES, INC., FOR IT'S MUELLER STEAM DIVISION, THE WILLIAM POWELL COMPANY, YORK INTERNATIONAL CORPORATION, YUBA HEAT TRANSFER LLC, AND ZURN INDUSTRIES, LLC.

7. At all times herein set forth, the Defendants' products were being employed in the manner and for the purposes for which they were intended.

8. Jurisdiction is appropriate for all defendants in this matter due to the fact that each and every one of them either maintains a registered agent and/or is present within this State and

purposefully avails itself of the rights and benefits of the laws of the State as a result of ownership of property, business operations, and/or sales to citizens of the State.

9. The Decedent's exposure to and inhalation, ingestion or absorption of the asbestos fibers emanating from the above-mentioned products was completely foreseeable and could or should have been anticipated by the Defendants.

10. The Defendants knew or should have known that the asbestos fibers contained in their products had a toxic, poisonous, and highly deleterious effect upon the health of persons inhaling, ingesting or otherwise absorbing them.

11. That on or about June 25, 2019, Decedent first became aware that he had developed lung cancer, an asbestos-induced disease, and that at a subsequent time learned said disease was wrongfully caused. Mr. Horton passed away on January 22, 2020, as a result of his lung cancer.

12. At all times herein relevant, the Defendants had a duty to exercise reasonable care and caution for the safety of the Decedent and others working with and around the products of the Defendants containing asbestos.

13. The Defendants failed to exercise ordinary care and caution for the safety of the Decedent in one or more of the following respects:

    (a) Included asbestos in their products, even though it was completely foreseeable and could or should have been anticipated that persons such as the Decedent working with or around them would inhale, ingest, bring it home or otherwise absorb great amounts of that asbestos;

    (b) Included asbestos in their products when the Defendants knew or should have known that said

        asbestos fibers would have a toxic, poisonous and highly deleterious effect upon the health of persons inhaling, ingesting or otherwise absorbing them;

(c)    Included asbestos in their products when adequate substitutes for the asbestos in them was available;

(d)    Failed to provide any or adequate warnings to persons working with and around the products of the dangers of inhaling, ingesting or otherwise absorbing the asbestos fibers contained in them;

(e)    Failed to provide any or adequate instructions concerning the safe methods of working with and around the products, including specific instructions on how to avoid inhaling, ingesting or otherwise absorbing the asbestos fibers in them; and

(f)    Failed to conduct tests on the asbestos containing products manufactured, sold, delivered or installed by the Defendants in order to determine the hazards to which workers and household members such as the Plaintiff, might be exposed while working with the products.

(h)    Failed to employ safe methods of working with or around asbestos, thereby releasing asbestos fibers.

14.    That as a direct and proximate result of one or more of the foregoing acts or omissions on the part of the Defendants mentioned above, the Decedent was exposed to and inhaled, ingested or otherwise absorbed great amounts of asbestos fibers causing Decedent to develop the asbestos disease aforesaid, which has disabled and disfigured the Decedent; the Decedent, prior to his death, was compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of his asbestos-induced disease and conditions; the Decedent, prior to his death, experienced great physical pain and mental anguish as a result of the inhalation, ingestion and absorption of said asbestos fibers; that as a further result of his asbestos-induced disease and conditions, the Decedent was hindered

and prevented from pursuing his normal course of employment, thereby losing large sums of money which otherwise would have accrued to him and his estate.

15. Defendants either owed a duty to Decedent or are liable for the tort of negligent undertaking pursuant to Sections 323 and 324A of the Restatement (Second) of Torts. Defendants undertook to provide services for others and therefore had a duty to use reasonable care in the provision of said services. Defendants' assumption of the duties enumerated herein and their failure to exercise reasonable care in the performance of such duties proximately caused Decedent's injuries and damages.

WHEREFORE, Plaintiff prays judgment be entered against the Defendants jointly and severally for actual and compensatory damages in an amount to be determined by a jury at trial and, in excess of FIFTY THOUSAND ($50,000.00) DOLLARS as well the cost of this action. Pre-judgment and post-judgment interest, and any other such relief that the court deems just and equitable.

> Respectfully submitted,
> JULIA HORTON, Individually, and
> as Special Administrator of the
> Estate of RAY HORTON, Deceased,

## COUNT II
## (WILLFUL AND WANTON COUNT)

Now comes the Plaintiff, JULIA HORTON, Individually, and as Special Administrator of the Estate of RAY HORTON, Deceased, by her attorneys, SWMW Law, LLC, and for their cause of action against the Defendants, states:

1. - 13. Plaintiff repeats and re-allege Paragraphs 1 through 13 of Count I as and for Paragraphs 1-13 of this Count II.

14. Defendants are guilty of one or more of the following acts or omissions amounting to willful and wanton misconduct:

(a) Intentionally or with a reckless disregard for the safety of Plaintiff, included asbestos in their products and/or installed asbestos-containing products, even though it was completely foreseeable and could or should have been anticipated that persons such as the Decedent, working with or around them would inhale, ingest or otherwise absorb great amounts of that asbestos;

(b) Intentionally or with a reckless disregard for the safety of Decedent, included asbestos in their products and/or installed asbestos-containing products when the Defendants knew or should have known that said asbestos fibers would have a toxic, poisonous and highly deleterious effect upon the health of inhaling, ingesting, bring it home or otherwise absorbing them;

(c) Intentionally or with a reckless disregard for the safety of Plaintiff, included asbestos in the products and/or installed asbestos-containing products when adequate substitutes for the asbestos in them was available;

(d) Intentionally or with a reckless disregard for the safety of the Decedent, failed to provide any or adequate warnings to persons working with and around the products of the dangers of bringing it home, inhaling, ingesting or otherwise absorbing the asbestos fibers in them;

(e) Intentionally or with a reckless disregard for the safety of the Plaintiff, failed to provide any or adequate instructions concerning the safe methods of working with and around the products, including specific instructions on how to avoid inhaling, ingesting or otherwise absorbing the asbestos fibers in them; and

  (f)  Intentionally or with a reckless disregard for the safety of the Decedent, failed to conduct tests on the asbestos containing products manufactured, sold or delivered by the Defendants in order to determine the hazards to which workers such as the Decedent might be exposed while working with the products.

15. Plaintiff repeats and re-alleges Paragraph 10 of Count I as and for Paragraph 10 of this Count II.

WHEREFORE, Plaintiff prays judgment be entered against the Defendants jointly and severally for actual and compensatory damages in an amount to be determined by a jury at trial and, in excess of FIFTY THOUSAND ($50,000.00) DOLLARS as well the cost of this action. Pre-judgment and post-judgment interest, and any other such relief that the court deems just and equitable.

            Respectfully submitted,
            JULIA HORTON, Individually, and
            as Special Administrator of the
            Estate of RAY HORTON, Deceased,

## COUNT III
### (CONSPIRACY AGAINST PNEUMO ABEX, LLC, as Successor in Interest to ABEX CORPORATION, METROPOLITAN LIFE INSURANCE COMPANY AND HONEYWELL INTERNATIONAL, INC., AS SUCCESSOR IN INTEREST TO BENDIX CORP.)

Comes now the Plaintiff, JULIA HORTON, Individually, and as Special Administrator of the Estate of RAY HORTON, Deceased, by her attorneys, SWMW Law, LLC, and for h cause of action against the Defendants PNEUMO ABEX, LLC, as Successor in Interest to ABEX CORPORATION, METROPOLITAN LIFE INSURANCE COMPANY and HONEYWELL INTERNATIONAL, INC., AS SUCCESSOR IN INTEREST TO BENDIX CORP., state:

1.     Plaintiff repeats and re-alleges Paragraph 1 of Count I as and for Paragraph 1 of this Count III.

2.     During the course of his employment, Decedent was exposed to and inhaled, ingested or otherwise absorbed large amounts of asbestos fibers emanating from certain products he was working with and around which were manufactured, sold or distributed by the Defendants named in Count I above.

3.     The Defendants, including PNEUMO ABEX, LLC, as Successor in Interest to ABEX CORPORATION, METROPOLITAN LIFE INSURANCE COMPANY and HONEYWELL INTERNATIONAL, INC., AS SUCCESSOR IN INTEREST TO BENDIX CORP. individually and as agents of one another and as co-conspirators, agreed and conspired among themselves and with other asbestos manufacturers, distributors, and trade organizations, to injure the Plaintiff in the following manner.

4.     Beginning in the late 1920's, the conspirators, Johns-Manville, Raybestos-Manhattan, Metropolitan Life Insurance Company, Honeywell International, Inc., as Successor in Interest to Bendix Corp. and others conducted research on asbestos-related health problems and as a result undertook a duty to inform the consuming public about any health risks that could be associated therewith. In approximately 1929, the conspirator, Metropolitan Life Insurance Company, through its agents and employees acting within the scope of their employment, notably Dr. Anthony J. Lanza, began an investigation of asbestos-related health hazards in the United States, by studying asbestos mines in Canada and on the Eastern seaboard of the United States. In 1935, this study was altered by Lanza, with the full knowledge of Metropolitan, at the request of and in concert with the asbestos industry, and the conspirators named herein in order wrongly to

influence the United States Public Health Service, the United States medical community and various state legislatures, including the New Jersey Worker's Compensation Commission.  At all times mentioned herein, Metropolitan Life Insurance Company was the general medical, disability and life insurance carrier, both occupational and non-occupational, for the conspirators Johns-Manville in the U.S. and Canada, and Raybestos-Manhattan, as well as others in the industry.

5.      Dr. Lanza's omission of any citation to the significant English literature from his 1935 published report was a continuation of the policy of Metropolitan Life and its co-conspirators, to misrepresent and suppress relevant information about the seriousness of asbestosis disease, especially to asbestos industry employees and consumers of asbestos products.

6.      The following conspirators were members of the trade association known as the Quebec Asbestos Mining Association ("Q.A.M.A."):  Johns-Manville Corporation, Carey Canada, individually and as successor to Quebec Asbestos Corporation, National Gypsum Company and Turner & Newall, individually and successor to Bell Asbestos.  These conspirators, members of the Q.A.M.A., participated in the above-described material misrepresentations of the work of Dr. Leroy Gardner published by Dr. Arthur Vorwald in the <u>AMA Archives of Industrial Health in 1951</u>.  Evidence of the Q.A.M.A.'s involvement in this misrepresentation arises from co-conspirator Johns-Manville's membership in the Q.A.M.A., as well as correspondence from co-conspirators dated 10/29/47, 11/26/47, 3/6/38, 10/15/48, 3/8/49, 3/21/51 and 9/6/50 and all indicating close monitoring of the editing process of Dr. Gardner's work by Q.A.M.A.'s representative Mr. Ivan Sabourin, acting on behalf of all Q.A.M.A. members, and also acting in close concert with the Metropolitan Life Insurance Company and Dr. Anthony J. Lanza.

7. In addition to the above described actions, the conspirators, through their agent, Dr. Anthony J. Lanza of the Metropolitan Life Insurance Company, made a concerted effort to discredit and to terminate the studies and experiments of certain scientists who were developing data of profound importance for the area of public health in relation to the lung cancer hazard which in fact did exist for workers and bystanders in the asbestos industry.

8. Because of the above-described efforts of Dr. Lanza of Metropolitan Life, and the other co-conspirators, many other active scientists in the field of environmental cancer were driven out of their laboratories soon after describing their findings on cancer hazards of asbestos/industrial health origin. This included Dr. Gerritt Schepers, who had conducted in-patient studies in South Africa. (Lanza and Vandiver Brown suppressed the publication of Schepers work while Schepers was affiliated at New York University.) These efforts wrongfully obstructed and confused the real asbestos hazard situation, and had a profound retarding effect on the evaluation of the truth in asbestos and asbestos-related health and cancer research.

9. In addition to all allegations above, the conspirators actively suppressed publications concerning asbestosis in the <u>Asbestos Magazine</u>, a trade magazine and important source of information to the public, and also to users of asbestos products, including users such as the Plaintiff herein. This magazine was read by sales and marketing personnel in the asbestos industry.

10. The acts of the defendant conspirators, as described above, constitute a fraudulent misrepresentation/concealment which proximately caused the injuries to the Plaintiff in the following manner:

      A.      The material published or caused to be published by the conspirators was false and incomplete in that the Defendants knowingly and deliberately deleted references to the known health hazards of asbestos and asbestos-related products.

      B.      The Defendants individually, as members of a conspiracy, and as agents of other co-conspirators, intended the publication of false and misleading reports, and/or the non-disclosure of documented reports of the health hazards of asbestos:

1. To maintain a favorable atmosphere for the continued sale and distribution and use of asbestos and asbestos-related products;

2. To assist in the continued pecuniary gain of the Defendants through the sale of asbestos products to an ignorant public;

3. To influence in the Defendant's favor legislation to regulate asbestos exposures and limit medical and disability claims for compensation;

4. To provide a defense in lawsuits brought for injury resulting from asbestos disease;

5. To prevent relevant medical inquiry about asbestos disease;

6. To mislead the general public, and the Plaintiff, herein, about the hazards associated with asbestos products; and

7. To induce the Plaintiff to use and continue to use asbestos products.

      C.      The Decedent reasonably relied upon the published medical and scientific data documenting the purported safety of asbestos and asbestos-related products, and the

absence of published medical and scientific reports on the hazards of asbestos and asbestos-related products to asbestos because they believed it to be safe.

        D.        Defendants individually, and as members of a conspiracy, and as agents of other co-conspirators intended that the Decedent, relied upon the published reports regarding the safety of asbestos and asbestos-related products and upon the absence of published medical and scientific data regarding the hazards of asbestos and asbestos-related products, to continue their exposure to those products.

        E.        Defendants individually, and as members of a conspiracy, and as agents of other co-conspirators were in a position of superior knowledge regarding the health hazards of asbestos and therefore the Decedent and others deciding to use said asbestos-containing products to which Decedent was exposed had a right to rely and did rely on the published reports commissioned by the Defendant regarding the health hazards of asbestos and the absence of published medical and scientific data regarding the hazards of asbestos and asbestos-related products.

        F.        Decedent suffered injuries as a direct and proximate result of the acts alleged above.

11.        As a direct and proximate result of Metropolitan Life's intentional publication of deceptive and misleading medical data and information, as described in the preceding paragraphs, upon which data the Plaintiff, reasonably relied, the Defendant caused asbestos and/or asbestos-containing products to be used by Plaintiff, and Plaintiff has inhaled or otherwise ingested hazardous asbestos dust, and/or will inhale or ingest hazardous asbestos dust, resulting in injuries.

12. Additionally and alternatively, as a direct and proximate result of Metropolitan Life, and Honeywell International, Inc., as Successor in Interest to Bendix Corp.'s actions and omissions as described above, the Plaintiff was caused to remain ignorant concerning the danger of human exposure to asbestos, resulting in damage to the Plaintiff by depriving the Plaintiff, his agents, employees and the general public, of opportunities to be aware of the hazards of asbestos exposure, and thus the opportunity to take proper safety precautions and/or avoid exposure to asbestos dust. Because of this ignorance on the part of the Plaintiff, PNEUMO ABEX, LLC, as Successor in Interest to ABEX CORPORATION, METROPOLITAN LIFE INSURANCE COMPANY and HONEYWELL INTERNATIONAL, INC., AS SUCCESSOR IN INTEREST TO BENDIX CORP.'s concealment from the Plaintiff of the alteration of its published test results, and the actions and omissions and concerted design and conspiracy of PNEUMO ABEX, LLC, as Successor in Interest to ABEX CORPORATION, METROPOLITAN LIFE INSURANCE COMPANY and HONEYWELL INTERNATIONAL, INC., AS SUCCESSOR IN INTEREST TO BENDIX CORP.'s and others, all as described above, the Decedent, was occupationally exposed to asbestos and/or asbestos-containing products used at their places of employment and has inhaled or otherwise ingested hazardous asbestos dust resulting in him developing lung cancer.

13. As a direct and proximate result of one or more of the foregoing acts or omissions on the part of PNEUMO ABEX, LLC, as Successor in Interest to ABEX CORPORATION, METROPOLITAN LIFE INSURANCE COMPANY and HONEYWELL INTERNATIONAL, INC., AS SUCCESSOR IN INTEREST TO BENDIX CORP. the Decedent, was exposed to and inhaled, ingested or otherwise absorbed great amount of asbestos fibers causing Decedent to develop the asbestos disease aforesaid, which has disabled and disfigured the Decedent; the Decedent, prior to his death, was compelled to expend and become liable for large sums of monies

for hospital, medical and other health care services necessary for the treatment of his asbestos-induced disease and conditions; the Decedent, prior to his death, experienced great physical pain and mental anguish as a result of the inhalation, ingestion and absorption of said asbestos fibers; that as a further result of his asbestos-induced disease and conditions, the Decedent was hindered and prevented from pursuing his normal course of employment, thereby losing large sums of money which otherwise would have accrued to him and his estate.

WHEREFORE, Plaintiff prays judgment be entered against the Defendants jointly and severally for actual and compensatory damages in an amount to be determined by a jury at trial and, in excess of FIFTY THOUSAND ($50,000.00) DOLLARS as well the cost of this action. Pre-judgment and post-judgment interest, and any other such relief that the court deems just and equitable.

> Respectfully submitted,
> JULIA HORTON, Individually, and
> as Special Administrator of the
> Estate of RAY HORTON, Deceased,

## COUNT IV
## (LOSS OF CONSORTIUM)

1. Plaintiff, JULIA HORTON, is the widow of RAY HORTON.

2. Plaintiff, JULIA HORTON, hereby incorporate the allegations contained in Counts I-III of this Complaint.

3. That as a direct and proximate result of one or more of the foregoing acts or omissions of the Defendants, the Plaintiff, JULIA HORTON, has been deprived of the companionship, society and services of her husband, RAY HORTON, all to her damage in an amount in excess of $50,000.00.

WHEREFORE, Plaintiff prays judgment be entered against the Defendants jointly and severally for actual and compensatory damages in an amount to be determined by a jury at trial and, in excess of FIFTY THOUSAND ($50,000.00) DOLLARS as well the cost of this action. Pre-judgment and post-judgment interest, and any other such relief that the court deems just and equitable.

Respectfully submitted,
JULIA HORTON, Plaintiff


Respectfully submitted,

SWMW Law, LLC

By: _____
Benjamin R. Schmickle, #6270568
Matthew C. Morris, #6285481
asbestos@swmwlaw.com
Attorneys for Plaintiff
701 Market Street, Suite 1000
St. Louis, MO 63101
(314) 480-5180
(314) 932-1566 Facsimile